ARMSTRONG v. BELDING BROS. & CO.

(Circuit Court, D. Connecticut.  July 6, 1909.)

No. 1,217.

PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—THREAD PACKAGE.

The Schroeder patent, No. 546,251, for a thread package, is a pioneer patent of merit, and entitled to a liberal construction, being the first device for packing individual skeins of embroidery silk which protected them from being tangled and soiled, and enabled the user-to draw out the silk thread by thread without breaking the package. The Schroeder patent, No. 546,123, is also valid as covering a specific improvement on the package of No. 546,251, which was the earlier invention. Both patents also *held* infringed.

[Ed. Note.—For other cases, see Patents, Dec. Dig. § 328.*]

In Equity. On final hearing.

Livingston Gifford and Ernest Chadwick, for complainant.

Robert B. Honeyman, A. Parker-Smith, and Gross, Hyde & Shipman, for defendant.

PLATT, District Judge. This is the usual patent suit, based on claims 1 and 2 of Schroeder patent, No. 546,251, dated September 10, 1895; the sole claim of the Armstrong patent, No. 523,139, dated July 17, 1894; and claims 1 and 2 of a later Schroeder patent, No. 546,123, dated September 10, 1895. The inventions covered by these patents are said to be capable of conjoint use. They are stated above in the order of their importance, because the date of the invention of the first-named Schroeder patent is stipulated to be as early as January 1, 1894, and the Armstrong and later Schroeder patents stand on the dates of their respective applications, viz., May 18, 1894, and June 11, 1895. For convenience the claims at issue are here set forth.

Schroeder Patent, No. 546,251.

Claim 1: "A thread package, consisting of a folded casing embracing the skein, the said casing being provided with a bearing piece, folded upon itself, the bight of the fold forming a bearing for the skein and a partition between the sides of the skein, the said folded bearing piece being permanently attached to one only of the opposite sides of the casing, substantially as set forth.".
Claim 2: "A thread package, consisting of a folded casing for embracing the skein, one of the folded parts of the casing located between the walls of the casing being further folded, the bearing edge of the fold extending transversely to the longitudinal direction of the skein and forming a partition between the sides of the skein, substantially as set forth."

Armstrong Patent, No. 523,139.

Sole Claim: "A thread package, consisting of a casing or envelope, inclosing a skein as set forth, said casing being closed at one end within the doubled portion of the skein to prevent the withdrawal of the latter, all substantially as specified."

Schroeder Patent, No. 546,123.

Claim 1: "A thread package, comprising a folded body portion, an end portion reinforced by folded flaps and further folded within the end of the casing,

forming a bearing over which the threads of the skein may be withdrawn from the package, substantially as set forth."

Claim 2: "The thread package, comprising the folded body portion and the end portion formed integral with the body portion and reinforced by folded flaps, the said end portion being further folded within the end of the casing to form a bearing over which the threads of the skein may be withdrawn, substantially as set forth."

The Schroeder patent, 546,251, is entitled to generous treatment. It was the first invention which undertook to preserve and care for individual skeins of embroidery silk. Up to that time the silk had always been packed and sold as shown in Complainant's Exhibit Old Style Package. The invention did what its author said it would do. Tangling and soiling of the skeins were practically done away with; the worker could remove the entire skein, thread by thread, without breaking up the package; color and size could be duplicated at the store, without carrying a sample; and, in general, it was a boon to maker, seller, and user.

It is more than a package or envelope. It is really a machine, with a well-defined mode of operation. The mechanical idea has to do with the removing of thread after thread of the skein without tangling the silk or destroying the envelope. A portion of the package, being left free on one side, can be folded upon itself, and then, after further folding, can be used as a support over which the skein of silk is thrown. The sides of the package are then folded over each other and over the support, thus retaining the skein snugly within the package or casing. The support serves to separate the skein and to furnish a bearing piece over which each individual thread can, after the skein has been cut at the bottom end, be drawn forth and used by the worker.

This invention was a new and useful thing. The attempt to hunt out something which might suggest the idea among envelopes and fly books and embroidery cases is vain and unconvincing. The peculiar characteristics of floss silk make it impossible to wind it upon spools or to run it through holes in cardboard or wood. It is, therefore, evident that nothing in the prior art tended in the remotest degree to shed any light upon the problem which confronted Schroeder and Armstrong at the time of the interference in 1894. The end pull mode of operation upon the silk threads within the inclosing and retaining package is the essence of the invention. It demands the co-operation of the silk, the bearing piece, and the casing, and it works like a charm.

The word "pioneer" has been worked overtime in patent opinions; but I am bound to say that it can be applied to the Schroeder invention with very good grace. The Neergaard exhibits are unconvincing. The raw edges never were used as bearing pieces, and were never thought about as useful for such a purpose. Moreover, they could not have been so used, if any one had thought of trying to do so. To rely upon them as anticipating devices is to ignore every principle of law which has been laid down by the courts regarding such matters.

If my notion about the Schroeder invention is correct, every question discussed by the contestants herein answers itself. It would be wasted time to dissect the infringement proposition. The defendant's structure reads upon the claims of the earlier Schroeder patent with un-

usual exactness. Whenever it goes in any degree beyond the patent discussed, it invades the later Schroeder patent; and certainly the defendant presents no excuse for a trespass on Schroeder by showing that at the same moment it was stepping upon other people's corns.

Just a word about the birth of the Schroeder idea: Armstrong and he had the same notion, and both applied for patents—Armstrong on August 4, 1894, and Schroeder on June 22, 1894. The subject-matter of the interference was:

"A thread package, consisting of a folded casing for embracing the skein, one of the folded parts of the casing located between the walls of the casing being further folded, the bearing edge of the fold extending transversely to the longitudinal direction of the skein and forming a partition between the sides of the skein."

Armstrong had filed another application on May 18, 1894, which resulted in patent 523,139, dated July 17, 1894. That was cited against his August 4th application, but did not narrow in any way the subject of interference. Schroeder carried his date of conception back of January, 1894, and won the interference contest. Armstrong then bought up Schroeder, and used the claims of his August 4th application as fitting and appropriate to the invention set forth in Schroeder's specifications. They appear to fit the invention described by Schroeder with exactness, and I can see no reason for searching into a controversy between Armstrong and the patent examiner to learn what meaning should be attached to the claims when fitted upon the Schroeder disclosures. No such right inheres to an invader of the Schroeder preserve as it was finally ticketed, labeled, and issued from the Patent Office. The claims which appear in the Schroeder patent are, as I have said, perfect fits for the Schroeder disclosure, and that ought to be the end of the contention about the effect of the claims and what they mean.

Schroeder in 546,251 was the first to utilize a folded-over part of the skein-embracing casing as a bearing for the withdrawal of the threads. Armstrong, in patent 523,139, shows an extension of one portion of the casing upon which a skein can be hung, and which is then folded over so as to prevent the withdrawal of the skein. Complainant says that this end extension, when folded over, forms a bearing upon which the individual threads can be drawn out. Nothing is said in the specifications or claim about its acting as a bearing piece, and I doubt whether it has that function inherent to its construction. It is certain that, if Armstrong had made such a claim for his invention, it would have been a pertinent reference against his claims in the August 4th application. As here construed it was unimportant, as I have said just above in discussing the transfer of claims.

The value of the folded-over extension as a bearing piece belongs to Armstrong, because he bought it from Schroeder, and the only importance to be attached to his invention of 523,139 lies in the fact that he gets from it the right to fold over endways an extension of the casing, and thus prevent the removal of the doubled skein through which the extension has been passed. The patent may be valid. Whether infringed or not is another matter. If my views of the earlier

Schroeder patent are correct, it is better to eliminate it from our discussion.

The later Schroeder patent embodies the essential elements of the earlier Schroeder patent and an endwise-folded bearing flap which is first reinforced by portions of the side extension folded over it. There is nothing new presented against this patent, except Fraley, 534,390, "silk or thread package," and Smith, 536,313, "skeinholder."

Fraley has a "skein retainer" within his casing, which is introduced as a separate entity, and after fastening it within the casing he tries to get a bearing for the individual threads by his combination. This is a complicated effort to arrive at a result which Schroeder gets by using a folded portion of the casing itself as a bearing. Smith's way of getting the individual threads out is more complicated than Fraley's. They have no value as anticipations. It would be unfair to this patent to treat it in any other way than as a specific improvement upon the broader conception of the earlier Schroeder patent. Thus treated, it is infringed.

The defendant's structure has a flap, folded first sideways and then endways, which is utilized as a bearing piece over which the individual threads can be drawn forth. It therefore infringes the underlying essential principles of the first Schroeder patent and the specific improvements thereon to be found in the second Schroeder patent. Defendant's thread package conforms exactly to the requirements of a patent which it owns; but, of course, that furnishes no excuse for an invasion of complainant's property.

If both parties owned nothing more than improvement patents, it goes without saying that the differences of detail in construction are enough to save the defendant. The complainant's patents, however, if entitled to the rank which I am sure they deserve, taken as a whole, entitle him to the protection which he seeks.

The claims of the two Schroeder patents in suit are valid and infringed. The defendant should not be held accountable for invasion of the sole claim of the Armstrong patent.

Let a decree be drawn in accordance herewith.